Your Honor, I have a distinct difference here in this case in that this Court ruled in Canatella v. California that I have standing to represent all members of the California Bar whose speech is or may be or has been chilled by these statutes. So I stand in front of you as a I'm confused a little bit, so maybe you could clarify before you get into that argument. I understand Canatella 1 and I've read it carefully, but the holding at the end of the case specifically talked about your having prudential standing and said that there's not a better time to try the case. But the Court never made a holding on Article 3 standing. It mentioned it, but it never held on Article 3 standing. So we have really, it seems to me before us in this case, Article 3 standing. So in your argument, because I think this is a critical area, I would like to know, in your argument, if you could tell me what is the specific activity that you're challenging. You're not relying on vexatious litigation. It's something else. And so as you argue, maybe you could focus my attention on that. Thank you, Your Honor. I think what we're saying is we're saying that these statutes reach too broadly and cover a lot of protected attorney speech. Essentially, that's what we're saying. And we're saying that the overbreadth of the statutes is more likely because of the ambiguity of the terms that we're dealing with. And that there's no question, in our mind at least, that these statutes reach a substantial amount of protected speech, attorney speech. Because each one of these statutes talks about, for example, in Subdivision C6068C, it talks about actions, proceedings, or defenses, all quintessentially attorney conduct in a proceeding, that appear to him or her legal or just, which means that the attorney has to be determined whether the attorney's speech was legal or just. We find that the way the district court seemed to make an attempt to limit that statute, and of course, the district court could not authoritatively limit 6068C, but the district court cited a number of cases, none of which were in the attorney speech context, and none of which addressed the textual problem that you have. My understanding is, a statute is designed to further a compelling interest of some kind. And the state claims, of course, that the protection of the public and the professional standards are very important interests. But that's not what Gentile says. And Gentile, I think we've got to start with says that the only time we're going to see a compelling state interest is if the attorney, his speech is confronting or conflicting with something like the right to a fair trial under the Sixth Amendment. And we will find that speech does not further or does further a compelling interest. And we find the state can regulate that kind of speech because it's attorneys having a press conference. But here, what we have here is we have no connection to our understanding between furthering high professional standards, protecting the public. What does that mean? And what's it got to do? Where does it connect to, for example, an attorney can only bring actions or proceedings that are legal or just. That's very difficult. And we don't have answers to that. I don't. Is there a specific injury that you're alleging? You're talking generality so far, but what is your specific injury that you're alleging? I think if the court is talking to Article 3 standing, we have something different here. We we have a pure overbreadth case here. We're not we have no fact case here. We're simply saying that these statutes that we confront every day, as they said, as this court said in Canatella one, it has no doubt that they reach speech and not only Canatella's, but other attorneys similarly situate a series of cases, obviously, as an exception to our usual. But even in overbreadth cases, there must be some concrete constitutional issue. Well, I think what what is there alleged in the complaint that shows that it only it only shows a threat? What is the concrete fact? What what is your injury or the injury of the lawyers, other lawyers in the overbreadth? Well, I think for one thing, I was actually disciplined under these sections, at least in this case, you rejected that. You said this is not a historical case. So you've rejected the past. Well, where where is your current problem? Not your past. See, I read I read Canatella one is putting us squarely in court under prudential standing. I didn't see the Article three issue. And if there is one, I missed it. But it seems to me Canatella one may have missed it. So if you missed it, that's OK, because there are three judges that where I started was the law of the case, at least, I think, is that I can stand here representing other attorneys. And I can say to you, what's a marvelous district judge, Stanley Weigel, taught me a lesson long ago. He said, Counsel, what's your best case? And I said, I got to give you my best case. Well, I've got two cases here. I've got one which you took offensive personality and concluded that that was you argued it. The opinion reads like an overbreadth traditional, but the case actually says we it tells us what happens if if if if this court believes that the statute is either vague or it's not narrow, narrowly tailored to the kind of conduct that you're trying to further an interest about, then you're not going to have any trouble striking it down. But but we got a good case, too. That's not an attorney speech case, but that's Reno and Reno and the Child Decency Act dealt with two terms that escaped me at the moment, but offensive, indecent, and it too was based on language like we have here. We have don't encourage the commencement or continuance of an action from any corrupt motive of passion or prejudice. Whose motive? The attorneys, the bar court, the client. We these these statutes can be narrowly tailored that they're not now. The district court read it in a way that was was kind of creative, where he focuses on frivolous, vexatious, misleading speech. But there's a lot more to this case than frivolous, vexatious and misleading speech. It's all about what attorneys do in their official capacities, counseling clients advocating on their behalf with all the pitfalls that that involves. Yet these statutes textually don't reach any vexatious, frivolous speech. They don't by their terms. I don't think we can abide that. Similarly, with the commission of any act and whether the act is in the course of an attorney's relations, any act that is moral turpitude, dishonesty, or corruption. I can think of a lot of scenarios where clients come in and they say, please get me redressed against my adversary. And you say as an attorney, but you know, you've got a problem here. You've got a prior order, might be a bar, res judicata. There's a number of things. Now, after we pass that threshold, because I think I think an attorney can bring a case on probable cause. I don't think there's any question about that. I think that's the line. An attorney cannot be disciplined for bringing an action that is based on probable cause, I believe. But under this statute, it could be that you're acting in moral turpitude because your motives are not pure. You're trying to get revenge or vengeance. When you say this statute, are you talking 6068C? I'm talking 6068C, 6068G, 6106. It's a whole series of statutes. Yes. Do you want to pick one? I'd kind of like to go back to Judge Wallace's, take a different run at what I thought was his question to you. Can you give us an instance in your case as to what you were censured for that you think violates your free speech rights? 6068C. That was 6068C. Why don't you tell me exactly what you think happened in this case that infringes your free speech rights? Well, I know it, and you have it in the record. What happened to me was I was disciplined for sanctions meted out by federal courts, state courts, and even appellate courts for pressing a point, for example. Reached judicata was my primarily big problem. I asked for reopen cases, and that's where I got hurt badly. I had one sanction that was a Sorensen sanction. I got in trouble with a reporter many years ago, but since then, since all this sanctions explosion, and this court's very well aware. 1983, it started with Rule 11, and I got caught in the middle of that, but I'm not justifying what happened to me or exonerating my conduct. I'm only saying that these statutes can sweep in a lot of what attorneys do every day in their official capacity, and that is not right. If you want to discipline an attorney for a, for example, a corrupt motive incident to something, then say it. If you want to discipline an attorney for taking a legal or unjust action that is frivolous, I guess, say that. None of these statutes give us any guidance at all on what we can say or what we can't say. That's a fact. And the interest that the bar offers to justify each of these rules, remember, we're talking about attorney speech, and we're talking about, I might add, political speech. What attorneys do is quintessentially political. Even the Gentile Court concluded that way, and the Gentile Court found that his speech had political overtones. Well, all attorney speech has political overtones. We're going to a court who is an authorized official to grant relief in a particular case. We talk about equity and policy and all of these different things. So these kinds of, this kind of conduct has to be protected because political speech is quintessentially First Amendment protected. But what is the particular constitutionally protected speech? You're still in generalization. You don't allege anything here specific except fear of what might happen. And I'm not sure that we have power to grant based upon that. How do we come to grips with that? At Common Law, quite a time, that was not good enough to get you in court, I appreciate. Because of fear is no good. But what we're doing here is something else. We're here on a Broderick-type First Amendment overbreadth case. This is the one area. I understand overbreadth is broader, but I don't know of a case that says you can say, it's overbreadth, therefore I don't have to allege any concrete fact at all. Anything specific that I'm concerned about. I don't know how to deal with it in the generality. And you sympathize with the Supreme Court. The Supreme Court is having problems with this overbreadth doctrine, too. And they have articulated in a number of cases that it's going to be reserved for that very narrow area of speech protection. And that's where we are here. That's why we can come into this court without a fact-based record. That's why First Amendment speech is so prized that we can do this. It's a unique situation. I completely appreciate the Court's remarks about Article III. It's a departure. It's not a traditional fact-based case. And I only am here because I read the prior opinion to be sufficient to give me prudential standing to stand up here and make this case. If I could reserve some time. Thank you. Good morning. May it please the Court. Robin Johansen on behalf of the State Bar Defendants. I'd like to begin, Judge Wallace, with your question about standing. And I have to say that I am afraid that the Court's prior opinion in this case is a bit confusing. I understand. At the end of the day, it says it's prudential. You didn't raise Article III standing in your briefs. So apparently you have the same difficulty as your adversary of not raising the question. But we have to. We have no choice. And Bell requires us to do so before we go further. So we'd appreciate your enlightenment, even though it's not been briefed, of why this case does or doesn't have Article III standing. Well, Your Honor, as I remember Article III standing, Lujan v. Defenders of Wildlife requires three things, an injury, in fact, that is redressable by the Court, and some sort of imminence or likelihood. Let me give you some help from a prior case of ours. An actual or threatened injury, or injury, in fact, is an invasion of a legally protected interest which is, A, concrete and particularized, and, B, actual or imminent, not conjectural or hypothetical, close quote. Now, you might attract that and then comment upon counsel's arguments that the overbreath excuses the need for allegations of something so specific. Thank you, Your Honor. I believe, when I look back at the Court's analysis in this case of Mr. Calientele's that Mr. Calientele and the State Bar were philosophically on a collision course, using language I think from Berner, and that there's no better time than now to decide his claims. I read that as meaning that Mr. Calientele intended to repeat his activities. He has stated that he feels that he has a right to, a First Amendment right, to repeat the types of expression for which he was disciplined. And this Court said that the State Bar would discipline him again for that. So that in that sense, if Mr. Calientele is expressing a First Amendment, protected First Amendment right in those activities, there is the likelihood. I don't quite gain that from the record. Maybe you could help me with that. But it's the excerpt from Record Note 12. It says, quote, this is not about the historical record, close quote. And at that time, Mr. Calientele took the position that it's not about what he did before. It's about what he wants to do now. I agree, Your Honor. And I really find myself in a rather awkward position up here, arguing that there is standing when, in fact, I would very much like for there not to be. In some ways, we were in some of the same position, I suppose, as other attorneys faced with a particular question here. Can we in good faith make the argument that Mr. Calientele no longer has standing or does not have standing to bring this case? And when I look at footnote 14, Your Honor, the Court said that we do not imply that the mere existence of the challenged provisions gives rise to an injury sufficient for standing purposes. Instead, it is Calientele's history with the California Bar, his continuing activities as a zealous advocate, and the nature of his challenge to the provisions that lead us to conclude the requirements for standing are met in his complaint. We did argue, and I continue to believe, that Mr. Calientele has no standing to raise any equal protection challenge, which he did try to raise in one of his amended complaints. And I would also argue that there is no imminent threat of injury to Mr. Calientele's First Amendment rights unless he so truly does not understand the obligations and responsibilities of our profession. If he so truly does not understand them, then we must look at whether that lack of understanding is a reasonable one in light of what is expected of a member of the Bar. And what is expected of a member of this Bar or of any other Bar is that those attorneys know the difference between a legal and just cause of action. They know the difference when a client or when they are attempting to use the process of the court to abuse the integrity of the system, to harass or delay, to bring a cause of action that has no merit. Well, let's assume, for the sake of getting to the argument that you've actually briefed, that there is constitutional standing, and the Court has said before that there is prudential standing. What does he have to allege in the area of over-breath in order to allege a cause of action that can go forward? In your view, how specific does he have to make his challenges? I think his challenge, Your Honor, has to be specific enough to show that there is a substantial, a substantial over-breath factor, an effect on protected First Amendment conduct. And that hasn't happened here. And we have to go through each statute and regulation and ask that question each time. Yes, Your Honor, you do. That is not to say, however, that each statute and regulation can or should be read by itself. Most of these statutes that Mr. Canatella is attacking are to be read together. They have to do with the whole question of abuse of the integrity of the courts. And with the exception of the two statutes, one involving obeying a court order and the involving acts of moral turpitude, everything at issue here has to do with using our privileges as members of the legal profession to bring actions in the courts in a way that they should not be used. In other words, our privileges are given to us as members of the bar. And we are a part of a legal profession that has a very long history of what is expected of us, particularly in relationship in our dealings with the courts. And it is our duty to try to protect the courts from our clients' use or attempted use of those courts for improper purposes. And we all know what those are. We all know when someone is bringing an action for an improper purpose to delay or harass. It is simply not credible that a member of the bar who has gone through all the training that he has gone through, who has had the ability to conduct legal research, to find out what the case law is on frivolous actions, to find the many rules that govern issues involving frivolous actions. It is simply not credible that someone with that kind of training, who has been given the privilege of being a member of the bar, would not know what is prohibited. Now, I do believe, Your Honor, that when we look at the overbreadth claims, there simply is nothing in this complaint, nor can I frankly imagine a situation in which there is substantial overbreadth on the part of any of these statutes or rules. Remember that overbreadth requires a substantial effect on protected First Amendment conduct. It's probably more specific. It's a substantial amount of protected speech. But be that as it may, where in his argument does it fail to meet that the challenge laws chills a substantial amount of protected speech? What does he fail to do that you think he should have done to get by that? Frankly, I don't think we have any concrete examples of protected speech being chilled. Again, it's a question of what every attorney is required to know. And what every attorney is required to know is that we have an obligation to zealously represent our clients and to make all legitimate arguments that we can, including to press for the extension or modification of the law. So your argument, if I understand it correctly, is that he has to allege a concrete and just saying it isn't enough. What's your best case saying that he cannot get by on that generalization and has to allege something more specific? Your Honor, I think we'd be looking at Broderick for the substantial part of it. And this Court's opinion in the CTA versus State Board of Education case. And Gentile itself, the Gentile case really looks at the question of whether the particular speech at issue is conducted. We have to look at who is actually claiming the right to make the speech. And in Gentile, it's very clear that attorney speech can be regulated in a way that non-attorney speech cannot. And the Gentile majority makes that particularly clear with respect, of course, to in-court speech. And it's our position, and I think it's very hard to dispute, that in-court speech goes beyond what happens literally in this courtroom. In-court speech includes filings and pleadings that are made with the court. In-court speech, I believe, includes encouraging the filing of baseless lawsuits. Because even if the attorney herself does not file the paper, the client or the person whom she has encouraged to do that can do that or may do that, pro se. And so in-court speech, when we come to the issue of abuse of the integrity of the process by filing frivolous or vexatious types of litigation, has a broader definition than simply what happens literally within this courtroom. So overbreadth in this case must be viewed in the context of the facts at issue here. It's not enough to say that overbreadth, you know, might chill somebody else's speech. We're talking about lawyers. And it's the lawyers who are open to discipline as a result. I take it from your argument, the overbreadth argument would not extend to the other challenges that he's made under the First Amendment, et cetera. Overbreadth analysis is specific to these particular types of claims. You have other arguments for those other issues. Your Honor, if I understand your question correctly, overbreadth would not apply to the 6103, which is obeying court orders. It would not apply to acts involving moral turpitude, 6106. Yes. Because those really do not address substantially First Amendment expression. Those are much more related to conduct. They do not sweep the way a statute that is addressed purely to expression does. So overbreadth would not apply. In the same way, vagueness with respect to those particular statutes would be the classic due process vagueness, not the First Amendment vagueness kind of application. It's the Village of Hoffman Estates type of vagueness, where the statute has to be vague in all of its applications in order to be facially unconstitutional. It would be different if Mr. Canatello were making an as-applied challenge here. But he is not. And that's part of the confusion, I believe, as to standing, because he is claiming the right to bring facial challenges, and only facial challenges, to all of these statutes. Mr. Canatello has said that the district court applied the wrong test to the various statutes at issue here. If anything, the district court applied a very speech-protective, perhaps overly speech-protective test, because it used the Gentile test for out-of-court speech, and also used a balancing test for any aspect of these particular statutes that might cover speech in cases that are not yet pending. So in that sense, the district court was very careful to apply a very speech-protective test, and we simply cannot say that there was anything wrong with the test that the district court used here. I have really very little, if anything, to say on viewpoint neutrality, the argument that Mr. Canatello makes. I, frankly, cannot see how any viewpoint is at all discriminated against or targeted by any of the statutes at issue here. And finally, we do believe, however, that the district court erred in not dismissing the state bar court judges as individual defendants in this case. This court's opinion in Grant v. Johnson very squarely holds that a judge does not have the kind of sufficient interest to be a proper defendant in a case challenging the constitutionality of the statute. You haven't taken a cross-appeal as to that point, though. No, Your Honor. We cited a couple cases in our brief in a footnote as to why a cross-appeal was not necessary in this context, and I would be happy to find those in the brief for the Court if you'd like. But we did brief it. And the district court's reasoning was that the statutes at issue here form the very prison vector, I think was the way he put it, for the state bar court. And that's really not the case. If these statutes were found not to be constitutional, the state bar court would still have other responsibilities for disciplining, and then certainly there would be no doubt that the legislature and the California Supreme Court would change the rules to conform to any ruling. So the state bar court judges simply do not have a vested interest in the constitutionality of these particular statutes. The Court has no further questions. I'll submit. Thank you. Your Honor, if I heard it correctly, what the bar is arguing is essentially that attorneys are duty-bound to know the reach of each of these provisions. That is, attorneys by the law of the profession, by the privileges of the profession, by their training and experience, they know what is prohibited and what is permitted. Now, that same argument was flatly rejected by this Court in Wunsch. They made the very same argument there. They said attorneys are bound to know what offensive personality means. And this Court rejected it as being circular. And you're an attorney, so you know. But that doesn't meet First Amendment speech protection requirements. In order to meet First Amendment speech protection, excuse me, the state has to have a compelling interest, number one. And then they have to narrowly tailor their statute. We can't depart from these statutes by the law of the profession or by what attorneys are supposed to know or what they're duty-bound to know. We have to look at the language themselves. And we ask the question, do they reach enough speech? And I'm confident that a facial glance at these statutes shows that there's simply enough speech involved in actions, proceedings, encouragements, and all the different language that's used. So as far as the bar's argument that you know it when you see it, it's not sufficient. It has to be connected. Your interest in the public interest in protecting the public, in maintaining high professional standards, all the things that the district judge said, there has to be a connect between those interests and what's being written down as being prescriptions on attorney speech. There has to be. Now, the next point is the wrong test. I didn't mention this case, although we did it in our brief. We did mention it in our brief, a case called Velazquez. And the bar, of course, responded to that case and attempted to distinguish it on the ground that it's a content-based, viewpoint-neutral dichotomy. And our point was that Velazquez deals with attorney speech. Yes, it's called a public subsidy case, for sure. And it discusses those issues which are not relevant here. But the Supreme Court said some very protective things about attorney speech in that case. And I would cite that case to the court, and we have cited it, as being a mindset that the court, the United States Supreme Court has concluded that attorney speech is something to be reckoned with. And it should be protected. And it was protected in that case, making claims on behalf of the welfare recipients that these attorneys were representing. And I believe that it is probably the best pronouncement today that we have from the Supreme Court on the respect that the court feels toward attorney speech. Content-based, content-neutral, how can you talk about those subjects when you have inherent ambiguities in these sections? We don't know whether they're content-based or not. We don't know whether an argument that is legal or just can be determined to be content-based or not. It's the problem of ambiguity. We don't have to win this case on a vagueness challenge. We can win this case if the court feels that these statutes are overbroad and there's not a sufficient, connected, compelling interest to the language of these statutes, and that the court finds enough ambiguity in the statutes that threaten protected expression. That's all we need to win this case. And I don't — Can you give me an example of protected expression that is — Yes. For example, I go into court and I say, Judge, please reopen this case because the prior order is not given res judicata effect or collateral estoppel effect, and my client is entitled to return to court. I mean, that would be a legal and just argument. But it turned out that it was found to be wanting and disciplinable, and it was actually the bar statute that was used to discipline certain sanctions based on those facts. But that disciplinary matter is not before us here, right? No. No, it's not. Either this case is prudential standing, or if it's not, we've got a problem. We believe that the court couldn't read Canatella 1 to conclude something else, but it could happen. Finally, I don't want to — the test that this — you know, the — Your time is up, Counselor. If you have one last statement you'd like to make, I'll give you — Our best point that we put forward in the briefs was the district court's application of an incorrect standard. So you have that, Your Honors. Thank you. All right. We thank Counsel, and Canatella v. Stovitz will be submitted.
judges: Wallace, Bybee, Pregerson